## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

MAGGIE FRYER                                    CIVIL ACTION NO. 22-0962

VERSUS                                          JUDGE S. MAURICE HICKS, JR.

TECHE ACTION BOARD, INC.,                       MAGISTRATE JUDGE WHITEHURST
A.K.A. TECHE ACTION CLINIC

### MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment (Record Document 29) filed by the Defendant, Teche Action Board, Inc. ("TAC"). Plaintiff, Maggie Fryer ("Fryer"), has sued TAC for alleged discrimination against her based on Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 2000e, et. seq. ("Title VII") and 42 U.S.C. § 1981 for racial discrimination, a hostile work-environment, and retaliation based on her race. She also asserted claims against TAC under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12112, et seq., for failure to accommodate, discrimination and retaliation. Finally, she asserts Louisiana state law claims of battery under La. C.C. art. 2315. TAC moves for summary judgment dismissing all of Fryer's claims. Fryer filed an opposition to the motion. See Record Document 34.  TAC replied.  See Record Document 37.  After careful consideration of the parties' submissions, and the law applicable before the Court, TAC's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**.

### FACTUAL AND PROCEDURAL BACKGROUND

The present suit arises out of an employment relationship between Fryer and TAC that was terminated on January 19, 2022. TAC operates 16 clinics, including one in both Franklin and Morgan City, Louisiana, to provide services to patients in underserved

Health Professional Shortage Areas, all throughout south Louisiana.   See Record Document 29-1 at 1. Fryer worked full time as a Patient Service Representative ("PSR") for TAC for nearly a year. As a PSR, Fryer would input patient insurance information into TAC's records, verify patient insurance benefits, execute end of day paperwork, count money, prepare deposit slips, and review schedules for the next day, among other tasks. See Record Document 36 at 1.

Fryer is a white woman. See Record Document 34 at 1. As of April 22, 2021, there were 15 PSRs. Ten of the PSRs were Black/African American, and Fryer testified that she was the only white PSR in her department. See Record Document 36 (Fryer Deposition at 240) at 1-2. Among the other employees/supervisors relevant to this lawsuit were Carmen Robinson, Jackee Jackson, Paulette Tillman, Dr. Gary Wiltz (the Chief Executive Officer), Tomika Spenser, Alida Carter, Lawayna Charles, Keyonna Williams, and Kieasha Robertson, all of whom are Black/African American. See Record Document 34 at 1-2.

Fryer alleges that on April 8, 2021, she went to lunch and upon her return, co-employee Alida Carter ("Carter") approached her and struck her over the head with a stack of copy papers that was about three inches thick. See Record Document 36 at 2. Fryer reported the alleged incident to HR Manager Michelle Simpson ("Simpson"). See Record Document 36 at 2. Upon receipt of this complaint, Simpson forwarded it to Janelle Luquette ("Luquette"). See id. According to Simpson, Luquette carried out no investigation into Fryer's complaint. See id. Fryer testified that the day after Carter allegedly battered her with the stack of paper, she had a migraine after work and that her neck pain started on the day of the incident. See Record Document 36 at 3.

2

On or about April 16, 2021, Fryer asked Carmen Robinson ("Robinson") if a position was open at the TAC location in Morgan City to which she could transfer.  Fryer alleges that she was being bullied by Carter and allegedly told Robinson this, and her request for transfer was approved. See Record Document 36 at 3. About 3 days later, Fryer allegedly advised that she wanted to transfer because Carter was bullying her and had gotten physical with her. Robinson subsequently approved the request. See Record Document 36 at 3. On April 29, 2021, Fryer requested that she not transfer to Morgan City because of health concerns in having to drive long distances. TAC requested that Fryer submit a request for reasonable accommodation form. See Record Document 36 at 3. On May 4, 2021, Fryer met with Dr. Claude Meeks ("Dr. Meeks"), a family doctor, to address her symptoms, and he recommended that Fryer be provided accommodation of not being required to drive long distances. See Record Document 36 (Request for Reasonable Accommodation) at 4.

As stated above, Fryer was suffering from significant migraines she alleges were a result of the first battery by Carter. She visited Dr. Meeks again and subsequently asked to withdraw her request to transfer to Morgan City because of health concerns with driving long distances.  See Record Document 36 at 3 (Emails between Robinson and Fryer regarding withdrawal). After a visit complaining of her symptoms, Dr. Meeks recommended that Fryer be provided accommodation of not being required to drive long distances. See id.

Fryer alleges that on May 8, 2021, Carter battered her a second time during a meeting with co-workers – claiming that she aggressively grabbed her left arm and shook her. See Record Document 24-6 at 1. Fryer and Carter also got into a verbal dispute on

3

May 19, 2021, for which Jackson threatened to terminate them both if such behavior happened again. See Record Document 34 at 4 (Fryer Deposition at 245). On about June 4, 2021, TAC terminated Carter for "placing her hand onto Maggie's shoulder" without her consent and because of the May 19, 2021, incident. Record Document 34-7 (TAC Employee Notice of Non-Compliance for Alida Carter) at 5.

Thereafter, Fryer engaged with TAC's Human Resources Department on a couple of matters. Fryer also complained of being treated unfairly in comparison to her black colleagues. Fryer sent Jackson two emails complaining about being overworked and overwhelmed and she asked for help on August 8 and 10, 2021. In the August 10 email, Fryer complained she was allegedly doing more work than her colleagues, all of whom were black, and that was getting paid less than them. See Record Document 36 at 8.

On September 28, 2021, Dr. Donald Gervais ("Dr. Gervais") diagnosed Fryer with several ailments, but he primarily diagnosed her with chronic migraines. See Record Document 36 at 9. Dr. Gervais sent several ADA accommodation requests on behalf of Fryer to TAC over the course of several months. In those accommodations, Dr. Gervais requested a reduction in noise, bright lights, and strong odors/perfumes for about 3-6 months. See Record Document 36 at 10.

On December 7, 2021, a second meeting with Luquette about Fryer's accommodation requests was held. During this meeting, Fryer signed a document titled "Agreed Upon Accommodations," the named accommodations included screen protectors, a screen for lighting, and a "greener" workspace.  Record Document 36 at 11.

On about January 4, 2022, Dr. Gervais made a fifth accommodation request on behalf of Fryer because of her migraines. He noted that Fryer needed limited exposure

to stimuli such as perfumes, and that the use of screen protectors and light protectors, as well as 30 minutes to 1 hour lunch breaks, and a flexible work schedule.  See id.  Record Document 36 at 11.  On January 18, 2022, Fryer emailed Luquette asking if she could work from home, and she also noted in that email that she had not suffered from migraines in nineteen years until she was allegedly struck on the head by Carter.  See id.

TAC alleges that from September 27, 2021, until the date of her termination on January 19, 2022, it implemented many of the agreed upon accommodations and was in the process of doing more.  See Record Document 29-1 at 4. TAC alleges that the accommodation regarding lighting would have violated OSHA standards, and it was looking for a solution to this issue.  See Record Document 29-1 at 4.

On November 9, 2021, Fryer made a complaint of racial harassment to TAC that she was allegedly experiencing from Jackee Jackson and Lawayna Charles. In this complaint she claimed she was being called "the white girl at desk #1."  Record Document 24-7 (Fryer's 11/9/2021 Revised Complaint to TAC).

On January 19, 2022, at the recommendation of Williams, Fryer was terminated for allegedly violating Sections 402 and 403 of TAC's employee handbook.  See Record Document 29-1 at 3. Sections 402 and 403 of TAC's Employee Handbook require employees to obtain approval from their supervisor should they need to work outside of their scheduled work times. See id. at 8-9. According to TAC, approval would be needed to work through lunch, to take lunch at a different time, when the building was scheduled to be closed, as well as to work after the employee's shift was scheduled to end. See id. at 9. TAC alleges that Fryer violated these policies on at least three occasions, resulting in her termination. See id. at 3.

5

On April 8, 2022, Fryer instituted this action alleging four claims: (1) that TAC discriminated against her in violation of the Title VII and 42 U.S.C. §1981 because of her race by terminating her employment; (2) that TAC violated 42 U.S.C. §1981 by creating a racially hostile work environment which substantially affected the terms and conditions of her employment; (3) that TAC retaliated against her in violation of 42 U.S.C. §1981 by terminating and limiting her employment because of her race; and (4) that TAC was vicariously liable for the batteries against her committed by its former employee, Carter.

In her first Amending and Superseding Complaint (Record Document 17-1), Fryer amended and restated her claims as follows alleging seven claims against TAC: (1) race discrimination under Title VII and 42 U.S.C. §1981; (2) racially hostile work environment under Title VII and 42 U.S.C. §1981; (3) race based retaliation in violation of Title VII and 42 U.S.C. §1981; (4) disability discrimination in violation of the ADA; (5) failure to accommodate under the ADA; (5) disability retaliation under the ADA; and (7) a state law claim of battery because of the batteries committed by former TAC employee, Carter. TAC's Motion for Summary Judgment followed and is now before this court.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when the evidence before the court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. Id.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." Stahl v. Novartis Pharm. Corp., 283 F.3d 254, 263 (5th Cir. 2002) (quoting Fed. R. Civ. P. 56(c)).  Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. See id. In evaluating a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." Total E & P USA Inc. v. Kerr-McGee Oil & Gas Corp., 719 F.3d 424, 434 (5th Cir. 2013) (internal citations omitted).

## ANALYSIS

TAC moves for summary judgment on each of the 7 claims. The Court will analyze each claim separately.

A. **Title VII Race Discrimination Claim**

TAC argues that Fryer cannot make a *prima facie* case of discrimination for failure to identify a comparator. See Record Document 29-1 at 9. The Court agrees and finds that Fryer cannot establish a *prima facie* case necessary to prove her racial discrimination claim. Therefore, such claim does not survive summary judgment.

Title VII of the Civil Rights Act of 1964 tolerates no racial discrimination, subtle or otherwise. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973). Claims under Title VII and 42. U.S.C. 1981 are analyzed the same. See Willis v. Cleco

Corp., 749 F.3d 314, 317 (5th Cir. 2014) ("The legal framework governing claims over both statutes is the same as for claims brought under Title VII"). Title VII prohibits the discharge of "any individual" because of "such individual's race." Its terms are not limited to discrimination against members of any particular race. See McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 279, 96 S.Ct. 2574, 2578 (1976). Therefore, the governing framework applies to reverse discrimination claims like the instant matter. Because Fryer cannot provide direct evidence of race discrimination, the burden-shifting paradigm set forth in McDonnell Douglas governs her race discrimination claim.

The plaintiff bears the initial burden to establish a *prima facie* case of discrimination by a preponderance of the evidence. See McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. at 1824. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employer's actions. See id. "If the employer sustains its burden, the *prima facie* case is dissolved, and the burden shifts back to the plaintiff." Alvarado v. Tex. Rangers, 492 F.3d 605, 611 (5th Cir. 2007). The plaintiff must then show either that the employer's proffered reason is merely a pretext for discrimination, or that the plaintiff's protected characteristic was at least a "motivating factor" for the employer's actions. See id.

To establish a *prima facie* claim for race discrimination under Title VII, a plaintiff must show that she: (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside her protected group or was treated less favorably than other similarly situated employees (i.e., "comparators")  outside the protected group. See Ernest v. Methodist Medical Hospital Sys., 1 F.4th 333, 339 (5th

Cir. 2021) (citing Story v. Gibson ex rel. Dep't of Veteran Affs., 896 F.3d 693, 698 (5th Cir. 2018)).

It is undisputed that Fryer is a member of a protected class, was qualified for the position at issue, and that she was terminated, thus the first three elements are met. As to the fourth, TAC's motion argues that Fryer cannot establish a *prima facie* case for racial discrimination because she failed to identify a comparator.

To satisfy the "similarly situated" prong, the employee typically carries out a comparator analysis. Saketkoo v. Adm'rs of Tulane Educ. Fund, 31 F.4th 990, 998 (5th Cir. 2022). Under this analysis, Fryer must establish that she was treated less favorably than a similarly situated employee outside of her protected class in nearly identical circumstances. See id. "A variety of factors are considered when determining whether a comparator is similarly situated, including job responsibility, experience, and qualifications." See id.

To survive summary judgment regarding a comparator, Fryer must show genuine disputes that she and her alleged comparators: (1) held the same job or responsibilities; (2) shared the same supervisor or had their employment status determined by the same person; (3) have essentially comparable violation histories; and (4) have engaged in conduct nearly identical to the conduct that resulted in the imposition of conditions for the renewal of credentials for a shortened reappointment period. See Thomas v. Cook Child.'s Healthcare Sys., 2023 WL 5972048, at *4 (5th Cir. Sep. 14, 2023) (citing Ross v. Judson Indep. Sch. Dist., 993 F.3d 315, 322 (5th Cir. 2021)).

In the Thomas case, the plaintiff proffered two comparators whom the district court determined did not qualify after doing a comparator analysis, and the Fifth Circuit

ultimately affirmed the district court's decision that the Plaintiff could not establish a *prima facie* case as to his racial discrimination claim. See Thomas, 2023 WL 5972048, at *5. The Court finds that although this is an unpublished opinion, other opinions within the Fifth Circuit are also consistent in finding that a valid comparator who is similarly situated must be proffered. See Lee v. Kan. City Ry. Co., 574 F.3d 253, 262 (5th Cir. 2009) (finding that because Plaintiff proffered a satisfactory comparator, he established a *prima facie* case of the Title VII discrimination); see also Washington v. Nat'l Oilwell Varco, L.P., 634 F.Supp3d 316 (N.D. Tex. 2022) (finding that because there is no genuine issue of material fact indicating that Plaintiff "was treated less favorably than other similarly situated employees outside her class," the Court granted summary judgment). Fryer argues that comparator evidence is not required by the Fifth Circuit and does not proffer any employee outside of her protected class as a comparator in "nearly identical" circumstances.  See Record Document 36 at 17. Because she failed to do so, she has not met her burden of proving a *prima facie* case for racial discrimination.

Further, because the Court holds that Fryer has not met her burden to set forth a *prima facie* case of racial discrimination, we need not discuss the parties' remaining arguments regarding pretext. See Morris v. Town of Independence, 827 F.3d 396, 403 (5th Cir. 2016); see also Thomas 2023 WL 5972048, at *5 n.21. As such, Fryer's racial discrimination claim does not survive summary judgment and is therefore dismissed.

B. **Title VII and 42 U.S.C. §1981 Racially Hostile Work Environment Claim**

TAC argues that the allegations of harassment that Fryer alleges to have endured amount to trivial workplace issues and not harassment based upon Fryer's race, and that the alleged harassment by Jackson and Charles was neither severe nor pervasive. See

Record Document 29-1 at 12. Fryer argues that the following actions/inactions set forth genuine issue of material fact as to whether she experienced harassment: (1) Carter's alleged battery on April 8, 2021; (2) Luquette performed no investigation into Fryer's complaint about this battery; (3) Luquette allegedly was "not happy about Fryer's complaints" and "wanted to make things difficult for her"; (4) Fryer was allegedly called "that white girl" at work; (5) the alleged second battery by Carter on May 19, 2021; (6) an alleged incident on May 28, 2021, where an African American named Kevin yelled at Fryer and Jackson did nothing; and (7) a few instances in which other white employees claimed to experience offensive behavior. See Record Document 36 at 29-30.

Unlike the discrimination analysis above, hostile work environment claims are not proven using McDonnell Douglas or any other burden shifting scheme. Hostile work environment claims rely, for the most part, on direct evidence. See E.E.O.C. v. Bass Pro Outdoor World, Inc., 35 F.Supp.3d 836, 857 (S.D. Tex. 2014). Title VII "makes it unlawful for employers to require people to work in a discriminatorily hostile or abusive environment." West v. City of Hous., Tex., 960 F.3d 736, 741 (5th Cir. 2020). A hostile work environment claim "necessarily rests on an allegation that an employer has created a working environment heavily charged with discrimination." Raj v. La. State Univ., 714 F.3d 322, 330 (5th Cir. 2013). A hostile work environment claim requires: (1) membership in a protected group; (2) harassment; (3) based on a factor rendered impermissible by Title VII; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment yet failed to address it promptly. See Hernandez v. Yellow Transp. Inc., 670 F.3d 644, 654 (5th Cir. 2012). It is undisputed that Fryer is a member of a protected group. The other factors are unclear.

To be actionable, the work environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." Id. (citing Faragher v. City of Boca Raton, 524 U.S. 775, 787, 118 S. Ct. 2275, 141 L.Ed.2d 662 (1998)). To determine whether a work environment is objectively offensive, courts must consider "the totality of the circumstances," including: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance." EEOC v. WC&M Enters., Inc., 496 F.3d 393, 399 (5th Cir. 2007). No single factor is determinative. See Bye v. MGM Resorts Int'l, Inc., 49 F.4th 918, 924 (5th Cir. 2022). If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions. See Reine v. Honeywell Intern. Inc., 362 F.Appx 395, 397 (5th Cir. 2010).

In Hernandez, the Fifth Circuit noted that the district court did not err in finding that one of the key incidents, the Plaintiff having been threatened by a knife by a coworker, was irrelevant because there was no evidence that the event had anything to do with race. See Hernandez, 670 F.3d at 652. Further, other evidence was rejected by the district court because even if it reflected hostility toward one of the plaintiffs, there was no evidence that the actions were based on race. See id. A wide range of behaviors can make a workplace uncivil, but a plaintiff must show as one of the factors for a Title VII claim that the events were based on race. See id. (citing Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir.2002)).

Here, the only incident that Fryer cites to that specifically referenced race is her November 2021 complaint of being called "that white girl" by her coworkers.   Record Document 36 at 29.   As stated above, the plaintiffs in Hernandez failed to provide evidence that the alleged harassing events were based on race. The incidents involving Luquette's failure to investigate Fryer's complaints do not specifically indicate that she neglected to do so based on race as required by Title VII. Further, in Daniel, the record contained only one allegedly racist comment that an employee made about the plaintiff. See Daniel v. Bd. of Supervisors for LSU Agricultural and Mech. Coll., No. 21-30555, 2022 WL 1055578, *4 (5th Cir. Apr. 8, 2022). Although the comment about being "that white girl" might be offensive and uncivil, it is not enough to prove a hostile work environment claim as set forth in Daniel. See id. Additionally, although Fryer alleges that she was battered by Carter, who is an African American woman, there is no evidence that these batteries occurred because of or had anything to do with Fryer's race as required under Title VII.

Thus, Fryer's racially hostile work environment claim does not survive summary judgment.

### C. **Title VII & 42 U.S.C. §1981 Race Retaliation Claim**

The Court again employs the familiar McDonnell Douglas burden-shifting framework for Title VII retaliation claims. See Rios v. Rossotti, 252 F.3d 375, 380 (5th Cir. 2001). Accordingly, a plaintiff must first establish a *prima facie* case, after which the defendant must articulate a legitimate, non-retaliatory reason for the adverse action, at which point the burden shifts back to the plaintiff to "adduce sufficient evidence that would

permit a reasonable trier of fact to find that the proffered reason is a pretext for retaliation." Id.

To establish a *prima facie* case for retaliation, a plaintiff must show that: (1) he engaged in a protected activity, (2) an adverse employment action occurred, and (3) there was a causal link between the protected activity and the adverse employment action. See Hernandez v. Yellow Transp., Inc., 670 F.3d 644, 657 (5th Cir. 2012). There is no dispute as to the first two prongs of this analysis. See Record Document 29-1 at 23. TAC focused its motion for summary judgment regarding the retaliation claim on the pretext prong of the McDonnell Douglas framework.   See id.   TAC conceded that Fryer engaged in protected activity in her November 9, 2021, complaint, in which he complained about being called the "white female. . . who sits at desk 1." Id. at 22-23 (Fryer's 11/9/2021 Revised Complaint to TAC). It is also undisputed that Fryer was terminated. TAC does not address the causal connection; thus, the Court will begin its analysis with the third prong.

Retaliation claims under Title VII "must be proved according to traditional principles of but-for causation." Brown v. Wal-Mart Stores East, L.P., 969 F.3d 571, 577 (5th Cir. 2020). Specifically, "to survive a motion for summary judgment, a plaintiff must show a conflict in substantial evidence on the question of whether the employer would not have taken the adverse employment action but for the protected activity." Id. However, the but-for standard does not apply at the *prima facie* case stage. See Garcia v. Prof'l Cont. Servs., Inc., 938 F.3d 236, 242 (5th Cir. 2019). Instead, "[a]t the *prima facie* case [stage], a plaintiff can meet his burden of causation simply by showing close enough timing between his protected activity and his adverse employment action." Id. at 243.

In <u>Brown</u>, the court found that the approximately six-to-seven-week gap between the plaintiff's protected activity and her termination is shorter than gaps the Fifth Circuit has previously found sufficient to show a causal connection, and thus the plaintiff had met her *prima facie* burden on timing alone. <u>See</u> <u>Brown</u>, 969 F.3d at 578. Further, the Fifth Circuit has held that two-and-a-half months was a close enough period between the protected activity and an adverse employment action to show a causal connection. <u>See</u> <u>Garcia v. Prof'l Cont. Servs. Inc.</u>, 938 F.3d 236, 242 (5th Cir. 2019). Here, Fryer's complaint was filed November 9, 2021, and she was terminated on January 19, 2022. <u>See</u> Record Document 24-7 at 2; <u>see also</u> Record Document 24-46 at 12. Because this is a period of just over two months, Fryer has met her burden of proving a *prima facie* case for retaliation based on the timing alone.

Having stated a *prima facie* case, we move to the second part of the <u>McDonnell Douglas</u> framework where the burden is on TAC to articulate a legitimate, non-discriminatory purpose for an adverse employment action. TAC must point to admissible evidence in the record, but the burden is one of production, not persuasion. <u>See</u> <u>Shields v. Boys Town La., Inc.</u>, 194 F.Supp.3d 512, 523 (E.D. La. 2016). The defendant is not required to show that the employment decision was proper, only that it was not discriminatory. <u>See id.</u> "[E]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason" for an adverse employment action. <u>Id.</u> at 524.

TAC's non-discriminatory reason for Fryer's termination is based on two company policies; Sections 402 and 403 of TAC's Employee Handbook require employees to obtain approval from their supervisor should they need to work outside of their scheduled

15

work times. See Record Document 29-1 at 8-9 (Excerpt of TAC's Employee Handbook). According to TAC, approval would be needed to work through lunch, to take lunch at a different time, to work when the building was scheduled to be closed, as well as to work after the employee's shift was scheduled to end. See id. TAC asserts that Fryer's termination was on account of her multiple violations of these policies. See id. at 10. On December 16, 2021, Williams observed Fryer working through lunch, which is prohibited according to TAC's policy. See Record Document 29-3 (Fryer Employee Notice of Non-Compliance). Fryer claimed that she was unaware of the policy, but TAC asserts that three days prior, December 13, 2021, Fryer requested permission from Williams to take a late lunch so that she could leave early that day. See Record Document 29-1 (December 13, 2021, email between Fryer and Williams) at 10. Williams followed up with and advised all the PSR's about the policy.  See Record Document 29-5 (Declaration of Keyonna Williams) at 16-17; see also Record Document 29-5 (Declaration of Tomika Spencer) at 18-19. Fryer allegedly violated the policies two more times. See Record Document 29-1 (Fryer Employee Notice of Noncompliance) at 12. TAC has produced sufficient evidence from the record to constitute a legitimate, nondiscriminatory reason for Fryer's termination. Thus, the burden shifts back to Fryer.

TAC argues that Fryer fails to show that she would not have been fired but-for making her November 2021 complaint. In Brown, the temporal proximity between the plaintiff's protected activity and her termination is relevant to, but not alone sufficient to demonstrate, pretext. See Brown, 969 F.3d at 579 (citing Strong v. Univ. Healthcare Sys., L.L.C., 482 F.3d 802, 808 (5th Cir. 2007)).  The Court in Brown considered whether the Plaintiff's other evidence, in combination with this temporal proximity, is sufficient for a

reasonable jury to find but-for causation. See id. at 579. TAC argues that since an Administrative Law Judge issued a finding that Fryer was not entitled to unemployment benefits as she "was discharged from employment when she continued to work overtime after being warned," that there is no pretext. See Record Document 24-44 (State of Louisiana Board of Review Decision). Fryer provides evidence in the record as to the temporal proximity of the protected activity to the adverse employment action, to her November 9, 2021, complaint stating that she was being "singled out" and called "that white girl," an email complaining that she was getting paid less than her African American coworkers, and the altercations between herself and Carter. Record Document 24-7 (Fryer's 11/9/2021 Revised Complaint to TAC). Having considered this additional evidence, the Court must decide whether a reasonable jury could find that her November 2021 complaint was the but-for cause of Fryer's termination.

It appears that there is some ambiguity in the record, and because the proximity in time is so short and precedent allows, Fryer has shown that there are genuine issues as to material fact regarding her Title VII retaliation claim. Summary Judgment on this claim must be denied.

### D. **ADA Disability Discrimination Claim**

The McDonnell Douglas framework also applies to ADA disability discrimination claims. See E.E.O.C. v. LHC Group, Inc., 773 F.3d 688, 694 (5th Cir. 2014) (citing Neely v. PSEG Tex., Ltd. P'ship, 735 F.3d 242, 245 (5th Cir. 2013). In a discriminatory-termination action under the ADA, the employee may either present direct evidence that [she] was discriminated against because of [her] disability or alternatively proceed under the burden-shifting analysis first articulated in *McDonnell Douglas Corp. v. Green*, a Title

VII case." LHC Group, Inc., 773 F.3d at 694. The analysis first requires the plaintiff to establish a *prima facie* case of discrimination. See id. To prove a *prima facie* case for a violation of the ADA, a plaintiff must show that (1) she is disabled or regarded as disabled within the meaning of the ADA, (2) she is qualified for the job position, and (3) she was subjected to an adverse employment action on account of his disability or perceived disability. See id. at 697.

It is undisputed that Fryer was disabled nor that she was qualified for the job position as a PSR. Further, she suffered an adverse employment action when she was fired. Thus, she has met her *prima facie* burden. TAC's legitimate nondiscriminatory reasons are set forth in Section C, *supra*.

TAC's argument lies in that Fryer cannot prove that TAC's proffered reason for her termination was pretextual. TAC reiterates its arguments regarding her termination based on Sections 402 and 403 of the employee handbook. See Record Document 29-1 (Excerpt of TAC's Employee Handbook) at 32. It does not appear that Fryer can provide direct evidence that the proffered reason is pretextual. However, Fryer's failure to demonstrate pretext does not end the inquiry. Under the ADA, "discrimination need not be the sole reason for the adverse employment decision ... [so long as it] actually play[s] a role in the employer's decision-making process and ha[s] a determinative influence on the outcome" See Pinkerton v. Spellings, 529 F.3d 513, 519 (5th Cir. 2008). For this reason, an employee who fails to demonstrate pretext can still survive summary judgment by showing that an employment decision was "based on a mixture of legitimate and illegitimate motives ... [and that] the illegitimate motive was a motivating factor in the decision." Id.

There appears to be genuine issue of material fact as to whether Fryer's termination was based on a mixture of legitimate and illegitimate motives. Although TAC's reasons for Fryer's termination might be nondiscriminatory, as stated above, Fryer survives summary judgment on this claim as a reasonable jury could find based on a weighing of the evidence and credibility determinations that the termination was based on legitimate and illegitimate motives. Fryer's first accommodations request was submitted on April 20, 2021. See Record Document 24-10 (First Reasonable Request for Accommodation). Her second ADA accommodations request was filed on September 28, 2021. See Record Document 24-11 (Email dated September 27, 2021). TAC allegedly placed Fryer on administrative leave from November 12 until November 18, 2021, for requesting a meeting with Dr. Wiltz regarding her concerns.  See Record Document 24-33 (Fryer Deposition) at 158. On November 15, 2021, Fryer had her first in person meeting with Luquette about her disability requests. See Record Document 34-2 (Fryer Deposition) at 195. Fryer alleges that sometime after December 19, 2021, she was prohibited from working on Saturdays as she had previously done. See Record Document 34-8 (Fryer Deposition) at 164. Additionally, Fryer emailed Luquette on January 18, 2022, asking to work from home, and noting that she had not had migraine headaches for nineteen years until the alleged incident with Carter.  See Record Document 31-14 (1/18/2022 Email to Luquette) at 8. Fryer was terminated on January 19, 2022. See Record Document 24-4 (Fryer Employee Notice of Non-Compliance) at 3.

The evidence above presents an issue of material fact as to whether TAC's motives were legitimate or illegitimate in that the timing of Fryer's termination and her requests, meetings, and changes in work hours and duties are close in proximity. The

19

timing of these events and credibility behind TAC's decisions toward the end of Fryer's employment are something a factfinder should consider, as the Court cannot at this stage. Thus, this claim survives summary judgment.

E. **ADA Failure to Accommodate Claim**

An employer's failure to accommodate an employee's disability is an independent theory of liability under the ADA. See Dillard v. City of Austin, 837 F.3d 557, 562 (5th Cir. 2016) (citing LHC Grp., 773 F.3d at 703 n.6). To prevail on such a claim, a plaintiff must show: "(1) the plaintiff is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." Feist v. La. Dep't of Justice, Office of the Att'y Gen., 730 F.3d 450, 452 (5th Cir. 2013). A qualified individual is one who is "able to 'perform the essential functions'" of the position "'with or without reasonable accommodation.'" Credeur v. La. Through Off. of Attny. Gen., 860 F.3d 785, 792 (5th Cir. 2017). While an employer must "engage in a good faith interactive process" to identify reasonable accommodations, E.E.O.C. v. Chevron Phillips Chem. Co., 570 F.3d 606, 621 (5th Cir. 2009) (citing Cutrera v. Bd. of Supervisors, 429 F.3d 108, 113 (5th Cir. 2005)), in litigation, the employee must propose a reasonable accommodation as part of the *prima facie* case, See Riel v. Elec. Data Sys. Corp., 99 F.3d 678, 683 (5th Cir. 1996).

It is undisputed that Fryer is disabled for purposes of this claim and that her disability was known by TAC. The dispute lies in whether TAC provided reasonable accommodations for Fryer's disability. TAC provides a history of Fryer's requests for accommodation in its motion, stating that her first request was on April 29, 2021, and the

last was on January 4, 2022. <u>See</u> Record Document 29-1 at 28-29. Fryer argues in her motion that there were several accommodations that were never provided to her like: (1) a better headset, better migraine glasses, and her desk was to be moved to a separate area; (2) screens for lights over her desk and fluorescent light covers; and (3) TAC failed to reconfigure the open space with three separate workstations away from the intake desk, and allegedly, Fryer could not dim the lights without creating an OSHA violation. <u>See</u> Record Document 36 at 43.

TAC provides information that it participated in the interactive process up until the day Fryer was terminated. <u>See</u> Record Document 29-1 at 26-31. For instance, while the agreed upon light solution failed, TAC allegedly sought alternatives that would provide Fryer with a dim enough workspace to accommodate her disability. <u>See</u> Record Document 29-1 (January 5-12, 2022, Emails Regarding Accommodations) at 31. It appears that this inquiry is for a factfinder to determine whether the accommodations that TAC provided were adequate.

Thus, because the Court is not permitted to make credibility determinations at the summary judgment stage, this claim survives summary judgment.

F. **ADA Disability Retaliation Claim**

The analysis for an ADA retaliation claim is much like the Title VII discussion above. To establish a *prima facie* case of retaliation under the ADA or Title VII, a plaintiff must show that (1) she participated in an activity protected under the statute; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action. <u>See</u> <u>Feist</u>, 730 F.3d at 452. "If the employee establishes a *prima facie* case, the burden shifts to the employer to state

a legitimate, non-retaliatory reason for its decision." Id. "After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation," LeMaire v. Louisiana, 480 F.3d 383, 388–89 (5th Cir. 2007), which the employee accomplishes by showing that the adverse action would not have occurred "but for" the employer's retaliatory motive. Id. To avoid summary judgment, the plaintiff must show "a conflict in substantial evidence" on the question of whether the employer would not have taken the action "but for" the protected activity. Long v. Eastfield College, 88 F.3d 300, 308 (5th Cir.1996).

It is uncontested that Fryer established the first two elements of her *prima facie* case. She participated in a protected activity when she filed her requests for accommodations for the migraines she was experiencing, and her firing constitutes an adverse action.

A plaintiff alleging retaliation may satisfy the causal connection element by showing "[c]lose timing between an employee's protected activity and an adverse action against him." Feist, 730 F.3d at 454. Such temporal proximity must generally be "very close." Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273–74 (2001). The Fifth Circuit has found, for example, that "a time lapse of up to four months" may be sufficiently close, Evans v. Houston, 246 F.3d 344, 354 (5th Cir.2001), while a five-month lapse is not close enough without other evidence of retaliation, Raggs v. Miss. Power & Light Co., 278 F.3d 463, 472 (5th Cir. 2002). Such evidence may include an employment record that does not support dismissal, or an employer's departure from typical policies and procedures. See Schroeder v. Greater New Orleans Fed. Credit Union, 664 F.3d 1016, 1024 (5th Cir. 2011).

TAC argues that Fryer cannot make a *prima facie* case for ADA retaliation because she cannot show a causal connection between the protected activity and her termination. See Record Document 29-1 at 34. Specifically, it argues that since Fryer made her first request for accommodation on April 29, 2021, 8 and a half months before being fired from TAC, that the timing was too large to support a causal connection. Alternatively, TAC argues that the second accommodation request, September 29, 2021, was still too removed from her termination for timing alone to satisfy the causal element of Fryer's *prima facie* case. See Record Document 29-1 at 34-35.

Fryer argues that Dr. Gervais's fifth separate accommodation request on January 4, 2022, and being terminated 15 days later, means that the timing is sufficiently close enough to establish a causal connection. See Record Document 36 at 44. At this stage, the Court agrees with Fryer, as this accommodation request was well under the precedential time periods mentioned above, and thus she has met her *prima facie* burden.

TAC's legitimate nondiscriminatory reasons are the same as those discussed in Section (C) *supra*. Therefore, Fryer must show that but for the protected activity, that is, the request for accommodation, she would not have been terminated. The Court reiterates its discussion in Section (D), *supra*, as to evidence which presents a genuine issue of material fact as to Fryer's ADA retaliation claim. Specifically, the evidence regarding Fryer's change in work hours and her being placed on administrative leave along with the timing of her requests and meetings are more suited to be considered by a jury as it could allow for it to render a verdict in her favor.

Thus, this claim survives summary judgment.

23

G. **State Law Claims**

Fryer asserts claims against TAC for battery under Louisiana law. Since the alleged perpetrator, Carter, is not a party to this case, it is a claim for vicarious liability under Louisiana Civil Code article 2320. Fryer claims that there were two physical altercations involving herself and Carter. Fryer alleges that the first incident happened on April 8, 2021, when Carter allegedly hit Fryer on the head with a stack of papers. See Record Document 36. at 46. The second incident allegedly occurred on May 19, 2021, where Fryer claims Carter grabbed her arm and violently shook it. See id.

Under Louisiana law, a battery is "[a] harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact." Caudle v. Betts, 512 So.2d 389, 391 (La. 1987). For an employer to be vicariously liable for the tortious acts of its employees, the employee's tortious conduct must be so closely connected in time, place, and causation to his employment duties as to be regarded as a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interest. See Richard v. Hall, 874 So.2d 131, 138 (La. 2004). In an analysis of vicarious liability for an employee's tortious acts, the court must consider more than simply whether the employee was in the course and scope of employment at the time of the incident. An employer is not vicariously liable merely because his employee commits an intentional tort on the business premises during working hours. Vicarious liability will attach in such a case only if the employee is acting within the ambit of his assigned duties and in furtherance of his employer's objective. See Baumeister v. Plunkett, 95-2270 (La. 5/21/96), 673 So.2d 994, 996.

In determining whether vicarious liability applies, Louisiana courts consider the following factors: (1) Whether the tortious act was primarily employment rooted; (2) Whether the act was reasonably incidental to the performance of the employee's duties; (3) Whether the act occurred on the employer's premises; and (4) Whether the act occurred during the hours of employment. See id. at 996-97. All factors do not have to be met before liability may be found. See id. at 997 (citing Miller v. Keating, 349 So.2d 265, 268 (La. 1977)).

In this instant case, the only undisputed factor is that the incident occurred on TAC's premises. TAC asserts that, if the event occurred at all, Carter was not in the course and scope of her employment when the April 2021 battery allegedly happened. See Record Document 29-1 at 39. Fryer testified in her deposition that the April 2021 battery occurred within five minutes of her returning to work from her lunch break at 12:30p.m. TAC states that Carter's time records show that she began her lunch break that day at 12:15p.m. and did not return from lunch until 1:00p.m. See Record Document 24-29 (Carter Timesheet) at 1.  TAC also provides a description of the medical building in which Fryer and Carter worked together and states that Carter did not normally eat at her workstation and that for the battery to have happened, Carter would have had to make her way to Fryer's cubicle and discontinue her lunch break. See Record Document 29-1 (Declaration of Alida Carter) at 40. Further, TAC argues that Carter's actions were not employment rooted. See id.

The Louisiana Supreme Court stated that, "when an employee is taking a permissible break, a battery arises from employment regardless of the root cause of the dispute." Benoit v. Capital Mfg. Co., 617 So.2d 477, 480 (La. 1993). Thus, even if Carter

was on her lunch break at the time of the incident, that is not dispositive. Further, although TAC contends that Carter's actions were not employment rooted, in Carter's deposition testimony she stated that the argument that surrounded the battery was "job-related" and that it "wasn't personal." See Record Document 34-5 (Deposition of Alida Carter) at 10-12.

As to the May 2021 incident, TAC does not dispute that Carter placed her hand on Fryer's shoulder, but it does not claim that the battery occurred in that manner as testimony from witness testimony provides a different version of events. See Record Document 29-1 (Statement by Jackee Jackson) at 43. However, Carter was terminated because of this incident, evidence that would be more appropriate for a fact finder to consider. See Record Document 34-7 (TAC Employee Notice of Non-Compliance for Alida Carter) at 5. There are genuine disputes of material fact as to the evidence relating to at least one of the prongs, that is, whether the tortious act was primarily employment rooted. It is for the factfinder and not this Court at the summary judgment stage to weigh this evidence. Fryer's credibility is likewise an issue for the jury.

Thus, Fryer's state law claims survive summary judgment.

## CONCLUSION

Based on the reasons explained above,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Record Document 29-1) is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** as to the Title VII race discrimination claim and the Title VII and 42 U.S.C. §1981 racially hostile work environment claim. The motion is **DENIED** as to the Title VII & 42 U.S.C. §1981 race retaliation claim; the ADA disability discrimination

claim; the ADA failure to accommodate claim; the ADA disability retaliation claim; and the Louisiana state law claim for battery.

An order consistent with this ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 27th day of September, 2023.

_____
United States District Judge

27