**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION**

MAGGIE FRYER

VERSUS

TECHE ACTION BOARD, INC.
A.K.A. TECHE ACTION CLINIC

CIVIL ACTION NO. 22-962

JUDGE S. MAURICE HICKS, JR.

MAGISTRATE JUDGE WHITEHURST

**MEMORANDUM RULING**

Before the Court is Defendant Teche Action Board, Inc.'s ("TAC") Motion in Limine (Record Document 41) to exclude testimony of Dr. Alan Taylor ("Dr. Taylor") and Dr. Donald Gervais ("Dr. Gervais"), purported expert witnesses of Plaintiff, Maggie Fryer ("Fryer"). Fryer filed an opposition to this motion. See Record Document 49. TAC replied. See Record Document 58. For the reasons set forth below, the Motion in Limine is **GRANTED IN PART AND DENIED IN PART**.

**FACTUAL AND PROCEDURAL BACKGROUND**

The present suit arises out of an employment relationship between Fryer and TAC that terminated on January 19, 2022. The remaining claims in this case include a Race Retaliation Claim under Title VII of the Civil Rights Act and 18 U.S.C. Section 1981, claims under the Americans with Disabilities Act ("ADA") for Discrimination, Failure to Accommodate, and Retaliation, and a Louisiana state law claim for vicarious liability. See Record Document 41-1 at 1. Fryer claims that she suffers due to the alleged battery by her former co-worker at TAC, including bulging discs in her neck, muscle spasms, and numbness to her neck and upper body. See Record Document 41-1 at 2. Fryer claims that she suffered substantial damages including physical pain and suffering, disability,

1

and loss of enjoyment of life. See id. Fryer also alleges that her time at TAC caused her to suffer mental health issues, including severe depression. See id. Fryer claims that both Dr. Taylor and Dr. Gervais advised her that her severe depression and mental and physical pain was caused by what she experienced at TAC. See Record Document 41-2 (Fryer Deposition) at 192-93.

On March 22, 2023, Fryer submitted an Amended Expert Witness List to identify Dr. Taylor and Dr. Gervais as "medical providers" who may or will testify at trial. Record Document 41-3 (Maggie Fryer's Amended Expert Witness List) at 1. Fryer states that Dr. Taylor may testify as to the following matters:

> Dr. Taylor is a clinical psychologist who may testify, among other things, about his sessions with and treatment of Plaintiff, her preliminary diagnosis of an adjustment disorder with mixed features of anxiety and depression, her history of mistreatment at Teche Action Clinic, and any and all contentions and medical opinions contained in his medical records of Plaintiff.

See id. Fryer states that Dr. Gervais may testify as to the following matters:

> Dr. Gervais is a Board certified neurologist who may testify, among other things, about his medical treatment and care of Plaintiff, any and all contentions as set forth in his December 19, 2022 deposition, any and all contentions and/or medical opinions contained within his medical records of Plaintiff, and Plaintiff's future medical needs related to the trauma Plaintiff suffered on April 8, 2021 and May 18, 2021 as indicated in the attached February 28, 2023 letter to the undersigned..

See id. In the motion before the Court, TAC seeks to exclude the expert testimony of Dr. Taylor as he is not a "treating physician" for the purposes of Rule 26(a)(2)(C) and should be barred from providing expert testimony at trial. See Record Document 41-1 at 1. TAC also argues that Dr. Taylor should be excluded as a fact witness because he has no firsthand knowledge of any relevant facts, his testimony would comprise of

inadmissible hearsay, and his testimony would be duplicative of Fryer's testimony and unduly prejudicial to TAC. See id.

TAC also seeks to exclude the expert testimony of Dr. Gervais, arguing that Fryer's disclosure of Dr. Gervais' testimony does not comply with Rule 26(a)(2)(C) because her Amended Expert Witness List does not contain a "summary of facts and opinions" to which Dr. Gervais is expected to testify, so that he should not be permitted to testify as an expert. See Record Document 41-1 at 1-2. Alternatively, TAC argues that Dr. Gervais is not a treating physician to any mental health disorder or condition that Fryer may be experiencing, including anxiety and depression, so that offering Dr. Gervais as an expert on such topic would subject Rule 26(a)(2)(B), rather than Rule 26(a)(2)(C). See Record Document 41-1 at 2. Further, because Dr. Gervais did not provide a report pursuant to Rule 26(a)(2)(B), he should be barred from testifying as to any mental health disorder or condition as to Fryer, as well as to the cause of those symptoms. See id.

## LAW AND ANALYSIS

Federal Rule of Civil Procedure 26(a)(2) governs disclosure of expert testimony and requires parties to disclose expert witnesses they may call at trial at the time ordered by the Court. Fed. R. Civ. P. 26(a)(2). If the witness is a retained expert, 26(a)(2)(B) requires that the witness provide a detailed, written report. See LaShip, L.L.C. v. Hayward Baker, Inc., 680 Fed.Appx. 317, 324 (5th Cir. 2017). If the witness is not a retained expert witness, he or she is not required to provide the foregoing report. See id. However, 26(a)(2)(C) requires that the disclosure of such non-retained expert witnesses must additionally state: (1) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (2) a summary of the

3

facts and opinions to which the witness is expected to testify. See id. This latter category of experts includes treating physicians. See Fed. R. Civ. P. 26 advisory committee's note to the 2010 amendment; see also Hooks v. Nationwide Hous. Sys., LLC, No. 15-729, 2016 WL 3667134, at *3 (E.D. La. July 11, 2016). To the extent such witnesses intend to provide expert testimony under Evidence Rule 702, 703, or 705, they must provide the disclosures required by 26(a)(2)(C). See id.

### I.     Dr. Taylor

There appears to be no bright-line rule as to who qualifies as a "treating physician," but the Eastern District of Louisiana considered facts that determined whether doctors in a recent case were the plaintiff's treating physicians. In Collett v. Weyerhaeuser Co., the Court noted that one of the doctors in the case satisfied the status of a "treating physician" since he or his office colleague had a long history of treating the plaintiffs. 512 F. Supp. 3d 665, 672 (E.D. La. 2021), aff'd, No. 21-30449, 2022 WL 2387352 (5th Cir. July 1, 2022). However, the court noted that the evidence regarding the second doctor in the case did not indicate that she was a treating physician for either of the plaintiffs. See id. The second doctor saw one of the plaintiffs ten years prior and referred her to another physician, but the first time the doctor actually saw the plaintiff for the condition that was the focus of litigation was over a year following the complained event. See id. Additionally, this visit was apparently at the request of the plaintiff's counsel since he arranged and paid for the visit. See id. Further, the second plaintiff was never treated until after the start of litigation, and his attorney also paid for his visit. See id. The court found that this doctor was "clearly" a retained expert under Rule 26 and must produce a report before being

allowed to testify, and the doctor's failure to do so alone would disqualify her from testifying in the case. Collett, 512 F. Supp. 3d at 672.

Here, the Court looks to Dr. Taylor's deposition as evidence that he was retained for litigation, although Fryer maintains that he was not. See Record Document 56 at 3. In her deposition on February 7, 2023, Fryer claimed that she had been seeing Dr. Taylor once a week, starting two months before the deposition. See Record Document 41-2 (Fryer Deposition) at 190. In Dr. Taylor's deposition, he testified that he saw Fryer once on January 19, 2023. See Record Document 41-5 (Dr. Taylor Deposition) at 29. Dr. Taylor's medical records as of the date of his deposition confirm his statement that he only had one session with Fryer before her deposition. See Record Document 41-6 (Dr. Taylor's Medical Records) at 9. In Fryer's Opposition to this Motion, she points out that since Dr. Taylor's deposition he has seen her twice, once on July 31, 2023, and then again on September 5, 2023. See Record Document 56 at 1.

Fryer did not see Dr. Taylor until about two years after the alleged incidents and her termination occurred. See Record Document 53 at 2-5. Dr. Taylor testified in his deposition that he met with Fryer as a consultation to provide an "assessment" and "report." Record Document 41-5 (Dr. Taylor Deposition) at 109-10. He also testified that he did not have enough information based off this one visit to create a treatment plan for Fryer. See id. Further, Dr. Taylor testified that he saw Fryer because "Mr. Smith's office called and asked – mentioned that they had a client with work issues." Record Document 41-5 (Dr. Taylor Deposition) at 28. Dr. Taylor further testified that "Mr. Smith's office paid the bill" for Fryer's single session. Id. Additionally, although there were subsequent visits with Dr. Taylor after his deposition, two visits in the last several months before this ruling

5

does not amount to a "long history" of treating Fryer. Based on Dr. Taylor's deposition testimony and the medical records provided, it appears that Dr. Taylor was retained as an expert in this case, and therefore was required to produce a report under 26(a)(2)(B) in a timely manner.

In the current matter, expert reports were due on May 16, 2023. See Record Document 23 (Order Granting Motion to Modify Deadlines) at 1. Dr. Taylor's report is dated September 13, 2023. See Record Document 56-4 (Dr. Taylor's Report) at 1. Fryer cites testimony by Dr. Taylor stating that he was not retained as an expert. See Record Document 41-5 (Dr. Taylor Deposition) at 3. Further, Fryer argues that TAC did not suffer any prejudice even though the report was outside of the given deadlines. See Record Document 56 at 4. The Court does not agree. Dr. Taylor's report was submitted months beyond the deadline provided by the Court, and although Dr. Taylor purports that he was not retained as an expert, evidence in the record indicates otherwise.

Additionally, TAC argues that Dr. Taylor should be precluded from testifying as a fact witness as to Fryer's "history of mistreatment" during her time at TAC because Dr. Taylor's knowledge about any alleged mistreatment does not derive from his own personal knowledge, and that would be inadmissible hearsay under Federal Rules of Evidence 801 and 802. Record Document 41-1 at. 8. Witnesses who are found to be precluded from testifying as an expert may testify as a fact witness as to matters or any other matters that are within their personal knowledge. See Pittman v. U.S. Bank NA, Tr. to Bank of Am., NA, 451 F.Supp. 3d 686, 689 (E.D. Tex. 2020). Here, the Court agrees with TAC that Dr. Taylor does not have personal knowledge of the alleged incidents that occurred during Fryer's time at TAC. His only knowledge of the situation derived from his

personal meetings and discussions with the plaintiff. See Record Document 41-5 (Dr. Taylor's Deposition) at 40-42, 44-46. Since Dr. Taylor is not testifying as an expert witness, his testimony concerning his meetings with the plaintiff are excluded.

As to Dr. Taylor, this motion is granted. The Court finds that he was retained as an expert witness and his report was untimely. Dr. Taylor is also precluded from testifying as a "fact witness" and as a "treating physician."

## II.    Dr. Gervais

On September 24, 2021, Fryer began seeing Dr. Gervais for treatment of migraines. See Record Document 41-4 (Dr. Gervais' Medical Records) at 93. Dr. Gervais is board certified by the American Academy of Psychiatry and Neurology. See Record Document 41-3 (Maggie Fryer's Amended Expert Witness List, Dr. Gervais' Curriculum Vitae) at 1.

Following the Court's reasoning in Collett, Dr. Gervais qualifies as a treating physician, as his treatment of Fryer began before litigation and has been ongoing for several years. See Collett, 512 F. Supp. at 672; see also Record Document 41-4 (Dr. Gervais' Medical Records). As stated above, although a treating physician is not required to submit a report under 26(a)(2)(B), the propounding party must prepare a "disclosure" regarding that witness and identifying "(i) the subject matter on which the witness is expected to present evidence pursuant to Federal Rules of Evidence 701, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Hebert v. Prime Ins. Co., 459 F.Supp 3d 766, 772 (W.D. La. 2020) (citing Sheppard v. Liberty Mut. Ins. Co., 2017 WL 467092, at *1 (E.D. La. Feb. 2, 2017) (citing Fed. R. Civ. P. 26(a)(2)(C)).

7

Disclosures consisting of medical records alone are insufficient to fulfill the disclosure requirement. The proponent must provide notice through "an actual summary of the facts and opinions to which the witness is expected to testify." Id. "The court must exclude or limit expert testimony if the expert's disclosure was improper unless the improper disclosure was 'substantially justified or is harmless.'" Patton v. Jacobs Eng'g Grp., Inc., No. 15-123, 2016 WL 1090566, at *3 (M.D. La. Mar. 18, 2016) (quoting Fed. R. Civ. P. 37(c)(1)). In determining whether exclusion is appropriate, the court should consider (1) the importance of the witness's testimony; (2) prejudice to the opposing party of allowing the witness to testify; (3) possibility of curing such prejudice by granting a continuance; and (4) the explanation, if any, for the party's failure to comply with the discovery order. Id. (citing Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., 73 F.3d 546, 572 (5th Cir. 1996)).

Here, Dr. Gervais' testimony appears to be important as his testimony will ostensibly provide the jury with information regarding Fryer's alleged disability. It forms centerpiece of the remaining claims under the ADA. As to the third prong, there is no continuance available in this matter. Further, Fryer asserts that she complied with the discovery order by providing medical records and case lists in the discovery stage. See Record Document 56 at 10. As to whether TAC will be prejudiced by allowing Dr. Gervais to testify, the Court notes that although Fryer's Amended Expert Witness List's description is brief, Dr. Gervais was deposed before the May 16, 2023, deadline on December 19, 2022. See Record Document 41-7 (Dr. Gervais' Deposition). Further, TAC was provided with Dr. Gervais' medical records. See Record Document 41-4 (Dr. Gervais' Medical Records). Dr. Gervais' deposition testimony provides the Court with more than just his

medical records, and it appears that the disclosure in this case is harmless under precedent.

TAC also argues that should Fryer seek to have Dr. Gervais testify as to the cause of Fryer's anxiety and depression he would have needed to file an expert report pursuant to Rule 26(a)(2)(B). See Record Document 58 at 6. Dr. Gervais testified in his deposition that "when she was let go or quite or whatever happened, it had a significant effect on her. It's definitely affecting her anxiety level and her depression." Record Document 41-7 (Dr. Gervais' Deposition) at 25-26. He also testified thereafter, "[n]ow, keep in mind, I'm not managing it. I'm just making a statement that that experience exacerbated her underlying migraine and neck problems." Id. at 26. This goes beyond his treating physician testimony.

"[D]istrict courts in this circuit agree that the treating-physician exception to the expert report requirement applies only when the treating physician's opinion testimony is based on personal knowledge obtained from examining and treating an individual." MedArc, LLC v. Scott and White Health Plan, 618 F.Supp. 3d 365, 374 (N.D. Tex. 2022) (citing Cooper v. Wal-Mart Transp., LLC, No. 08-0085, 2009 WL 290447, at * 1 (S.D. Tex. 2009)). "[W]here a physician's testimony 'relies on sources other than those utilized in treatment, courts have found that the treating physician acts more like an expert and must submit a report under Rule 26(a)(2)(B).'" Parker v. NGM Ins. Co., No. CV 15-2123, 2016 WL 3198613, at *2 (E.D. La. June 9, 2016). Where testimony "consists of opinions based on 'scientific, technical, or other specialized knowledge' regardless of whether those opinions were formed during the scope of interaction with a party prior to litigation," the testimony is rather that of an expert. Moore v. DeJoy, No. 18-12270, 2022 WL 19263947

9

at *4 (E.D. La. Feb. 23, 2022). For example, testimony as to causation or as to future medical treatment has been considered the province of expert testimony subject to the requirements of Rule 26(a)(2)(B). Rea v. Wis. Coach Lines, Inc., No. 12-1252, 2014 WL 4981803, at * 2 (E.D. La. Oct. 3, 2014).

Because the Court does not find that exclusion of Dr. Gervais's testimony is warranted, he may testify when called. However, Dr. Gervais may only testify as to his "personal knowledge obtained from examining and treating" Fryer, any other opinions are specifically excluded and prohibited as he did not submit a report as required under Rule 26(a)(2)(B). MedArc., LLC, 618 F.Supp. 3d at 374.

For the foregoing reasons, Court denies the motion as to any testimony by Dr. Gervais beyond his status as a treating physician of the plaintiff.

## CONCLUSION

Based on the reasons explained above,

**IT IS ORDERED** that Defendant's Motion in Limine (Record Document 41) is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** as to the exclusion of Dr. Taylor's testimony. The motion is **DENIED** as to the exclusion of Dr. Gervais' testimony. Dr. Gervais' testimony is limited to that as a treating physician.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 11th day of October 2023.

                                                S.MAURICE HICKS, JR., DISTRICT JUDGE
                                                    UNITED STATES DISTRICT COURT